**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**HERBERT KUNKLE, JR., M.D. and**
**HERBERT KUNKLE, JR. M.D., P.C.,**

                          **Plaintiffs,**

                      v.                          **5:19-CV-784**
                                                  **(FJS/TWD)**

**AUBURN COMMUNITY HOSPITAL,**
**AUBURN MEMORIAL MEDICAL SERVICES,**
**P.C., SCOTT BERLUCCHI, JOHN RICCIO,**
**and SHERRI CLARK,**

                          **Defendants.**

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **WOODS OVIATT GILMAN LLP**<br>1900 Bausch & Lomb Place<br>Rochester, New York 14604<br>Attorneys for Plaintiffs | **DONALD W. O'BRIEN, JR., ESQ.** |
| **BOND, SCHOENECK & KING, PLLC**<br>One Lincoln Center<br>Syracuse, New York 13202<br>Attorneys for Defendants<br>Auburn Community Hospital,<br>Auburn Memorial Medical Services, P.C.,<br>Scott Berlucchi, and John Riccio | **ADAM P. MASTROLEO, ESQ.** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Dr. Herbert Kunkle, Jr., M.D. ("Plaintiff Kunkle") and his professional corporation of the same name ("Plaintiff P.C.") brought this action against Defendants for not renewing

various agreements between Plaintiffs and Auburn Memorial Medical Services, P.C. ("Defendant AMMS"), which is the professional corporation for Auburn Community Hospital ("Defendant Hospital"). *See* Dkt. No. 1, Compl., at ¶ 1.[1] Defendants Hospital, AMMS, Berlucchi, and Riccio (collectively referred to as "Defendants") filed the pending motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] *See* Dkt. No. 12.

## II. BACKGROUND

Defendant AMMS employed Plaintiff Kunkle, a board-certified orthopedic surgeon, from 2013 through August 2018. *See generally* Dkt. No. 1 at ¶¶ 14-27. During this time period, Plaintiffs and Defendant AMMS entered into five agreements setting forth the terms of Plaintiff Kunkle's employment. *See generally id.* at ¶¶ 14-26. These agreements included the following: (1) a July 14, 2013 Initial Professional Services Agreement; (2) an October 2013 Employment Agreement; (3) a November 1, 2013 First Amendment to the Professional Services Agreement; (4) a January 1, 2014 Second Amendment to the Professional Services Agreement; and (5) a May 1, 2014 Third Amendment to the Professional Services Agreement. *See id.* These agreements automatically renewed at the expiration of each term. *See id.* However, they also contained explicit non-renewal provisions permitting either party to notify the other in

---

[1] Since this is a motion to dismiss, the Court relies upon the factual allegations in Plaintiffs' complaint and accepts them as true for purposes of this motion.

[2] Notably, Defendant Clark is not presently represented by counsel, has not appeared in this case, and has not joined the other Defendants' motion to dismiss. Magistrate Judge Dancks has held Plaintiffs' motion for entry of default against Defendant Clark, *see* Dkt. No. 13, in abeyance until issues with service of process are resolved, *see* Dkt. No. 15.

- 2 -

writing of their intent not to renew as long as sufficient notice was given prior to the end of the initial or renewal term. *See id.*

By letter dated April 2, 2018, Defendant Berlucchi, as CEO and President of Defendant Hospital, notified Plaintiffs that Defendant AMMS did not intend to renew Plaintiff Kunkle's employment term in accordance with Paragraph 8(a) of the Initial Professional Services Agreement.[3] *See id.* at ¶ 27. According to Plaintiffs, Defendant Berlucchi asserted that the Commencement Date of that agreement was August 2, 2013; and, accordingly, Defendant AMMS had complied with its terms because it provided ninety days' notice of its intent not to renew the agreement prior to August 2, 2018. *See id.* Plaintiffs allege that, at a minimum, the annual renewal date would have been October 14, 2018, because the Initial Professional Services Agreement was executed on July 14, 2013. *See id.* at ¶¶ 28, 31.

Plaintiffs further allege that Plaintiff Kunkle had issues with Defendant Hospital prior to Defendant AMMS's choosing not to renew his contract. *See generally id.* at ¶¶ 41-46. Plaintiffs contend that Plaintiff Kunkle disclosed to Defendant Berlucchi legitimate, professional concerns about particular practitioners, procedures, and other "troubling practices" at Defendant Hospital. *See id.* at ¶ 41. In one example, Plaintiffs allege that a cardiologist needlessly delayed a patient's surgery, which caused the patient to develop complications that he would not have otherwise; and, after he reported this to Defendant Berlucchi and Defendant

---

[3] Paragraph 8(a) provides, "The Term of this Agreement shall commence upon the date Physician begins providing professional medical services for [Defendant AMMS] which shall be after the Physician is credentialed by [Defendant AMMS]'s payers, anticipated to be ninety (90) days after this Agreement is executed (the "Commencement Date") and shall continue thereafter for an initial term of two (2) years. Thereafter, the Agreement shall automatically renew for additional one (1) year periods unless either party provides the other party with written notice ninety (90) days prior to the end of the initial or any renewal term of its intention no[t] to renew." *See* Dkt. No. 1 at ¶ 16.

- 3 -

Riccio, the Chief Medical Officer for Defendant Hospital, Plaintiff Kunkle received his notice of non-renewal. *See id.* at ¶¶ 42-46.

Based on these allegations, Plaintiffs allege that Defendants Hospital and AMMS breached the agreements; and, in doing so, deprived Plaintiffs of, at a minimum, two months of base compensation and a pro rata allocation of an otherwise applicable bonus, as well as reimbursement of expenses to which Plaintiff Kunkle was entitled. *See id.* at ¶ 33. Plaintiffs filed their complaint on June 28, 2019, including causes of action for breach of contract, breach of the covenant of good faith and fair dealing, and tortious interference. *See id.* at ¶¶ 32-54.

In addition to the claims arising from Plaintiffs' and Defendant AMMS's agreements, Plaintiff Kunkle individually asserts a claim for defamation against Defendants AMMS and Clark based on an allegedly false representation that Defendant Clark, an administrator in the Department of Orthopedics, made to law enforcement. *See id.* at ¶ 1. Plaintiff Kunkle alleges that the he and Defendant Clark had a dispute about how to transfer a patient; and, during the course of the disagreement, Defendant Clark claimed that Plaintiff Kunkle harassed her. *See id.* at ¶¶ 58-60. Plaintiff Kunkle further alleges that, sometime in July of 2018, Defendant Clark filed a formal report of the alleged dispute with law enforcement; and she specifically claimed that Plaintiff Kunkle had touched her without her consent. *See id.* at ¶ 61.

As a result of the above-alleged facts, Plaintiffs claim that they are entitled to damages, costs, disbursements, and attorney's fees. *See id.* at ¶¶ 34, 38, 54, 64.

### III. DISCUSSION

**A. Legal standard**

A motion to dismiss pursuant to Rule 12(b)(6) "challenges only the 'legal feasibility' of a complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016) (quoting *Global Network*

*Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544,] 570, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations … a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] …" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). When making its decision, this court must "accept all well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff." *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 235 (2d Cir. 2008) (citing *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007) (per curiam)).

### B. Preliminary matters

In their Memorandum in Support of their motion, Defendants conceded that Plaintiffs' first cause of action for breach of contract against Defendant AMMS should proceed to the next phase of litigation. *See* Dkt. No. 12-2, Defs' Memorandum in Support, at 9. In their Response, Plaintiffs did not oppose Defendants' motion to dismiss their first, second, and fourth causes of action against Defendants Hospital, Berlucchi, and Riccio, or their third cause of action for

tortious interference against all Defendants.  *See* Dkt. No. 20, Pls' Memorandum in Opposition, at 9.  "A party may voluntarily drop claims. … In such a circumstance, it is appropriate for the Court to dismiss the abandoned claims with prejudice." *Allen v. N.Y.C. Hous. Auth.*, No. 10 Civ. 168, 2012 U.S. Dist. LEXIS 130307, *12 (S.D.N.Y. July 16, 2012) (collecting cases).  As such, the Court dismisses Plaintiffs' first, second and fourth causes of action against Defendants Hospital, Berlucchi and Riccio and their third cause of action for tortious interference against all Defendants with prejudice.

### C. Second cause of action for breach of the covenant of good faith and fair dealing against Defendant AMMS

"Under New York law, a covenant of good faith and fair dealing is implied in all contracts." *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011) (citing *Cross & Cross Props., Ltd. v. Everett Allied Co.*, 886 F.2d 497, 502 (2d Cir. 1989)).  "'This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Id.* (quoting *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153, 746 N.Y.S.2d 131, 773 N.E.2d 496 (2002) (citations and internal quotation marks omitted)).  "A breach of the duty of good faith and fair dealing is considered a breach of contract." *Id.* (citing *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004)).  "Therefore, '[a] claim for breach of the implied covenant [of good faith and fair dealing] will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach … of an express provision of the underlying contract.'" *Frankel v. U.S. Healthcare, Inc.*, No. 18 Civ. 06378 (ER), 2019 U.S. Dist. LEXIS 159794, *12 (S.D.N.Y. Sept. 17, 2019) (quotation omitted).  "Furthermore, 'under New York law, claims for breach of the implied covenant of good faith

which seek to recover damages that are intrinsically tied to the damages allegedly resulting from the breach of contract must be dismissed as redundant.'" *Nahabedian v. InterCloud Sys., Inc.*, No. 15-CV-669 (RA), 2016 U.S. Dist. LEXIS 3895, *9 (S.D.N.Y. Jan. 12, 2016) (quoting *ARI & Co. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 523 (S.D.N.Y. 2003)) (other citation omitted).

In their complaint, Plaintiffs alleged that Defendant AMMS breached the agreements by refusing to renew, at minimum, two months before it was entitled to; and, thus, Defendant AMMS deprived Plaintiff Kunkle of at least two months of compensation, bonuses, and expenses that he should have received. *See* Dkt. No. 1 at ¶¶ 31, 33. In their second cause of action, Plaintiffs alleged that Defendant AMMS refused to cooperate with Plaintiff Kunkle in transferring his patients to the care of other doctors. *See id.* at ¶ 37. However, in their Memorandum in Opposition, Plaintiffs clarified that their breach of the covenant claim actually relied on the fact that Defendant AMMS "retaliated" against Plaintiffs and "unjustifiably" and "unreasonably" refused to renew Plaintiff Kunkle's contract. *See generally* Dkt. No. 20 at 5-7. Defendant AMMS's reasons for refusing to renew Plaintiff Kunkle's contract are inherently part of the facts underlying Plaintiffs' first cause of action for breach of contract. Furthermore, as Defendants point out, Plaintiffs only seek damages related to Defendant AMMS's alleged breach of contract; they do not seek any new or different damages in their second cause of action. *See generally* Dkt. No. 1 at ¶¶ 32-38. For these reasons, the Court finds that Plaintiffs' second cause of action for breach of the covenant of good faith and fair dealing is duplicative of their first cause of action for breach of contract.

### D. Fourth cause of action for defamation against Defendant AMMS

Plaintiffs contend that Defendant AMMS employed Defendant Clark and that Defendant Clark was acting within the scope of her employment when she allegedly made a false report to law enforcement about Plaintiff Kunkle. *See* Dkt. No. 20 at 8. Thus, it appears Plaintiffs are arguing that Defendant AMMS should be held vicariously liable for Defendant Clark's allegedly false report. "'Under New York law, an employer can be held vicariously liable for a defamatory statement made by one of its employees, but only if the employee made the statement in the course of performance of her duties.'" *D'Lima v. Cuba Mem. Hosp., Inc.*, 833 F. Supp. 2d 383, 391 (W.D.N.Y. 2011) (quoting *Perks v. Town of Huntington,* 251 F. Supp. 2d 1143, 1166 (E.D.N.Y. 2003)). "New York courts have pointed out several key inquiries to decide whether at a particular moment an employee is engaged in the employer's business[.]" *Id.* These inquiries include the following:

> (1) did the employee's acts fall within the direction and control of the employer; (2) did the employee act under the express or implied authority of the employer; (3) was the employee's act in furtherance of the employer's interests; (4) were the employee's acts in the "discharge of duty" to the employer; (5) was it an act in the execution of employer's orders or part of the work assigned by the employer; and (6) were the acts "so closely connected" with what the employee was hired to do, and "so fairly and reasonably incidental to it that they may be regarded as methods, even though quite improper ones, of carrying out the objects of the employment". *Rausman v. Baugh*, 248 A.D.2d 8, 682 N.Y.S.2d 42 (2nd Dep't 1998) (citing cases).

*Id.*

Even considering the facts as true and looking at them in the light most favorable to Plaintiffs, there are simply no allegations in the complaint that Defendant Clark, as an administrator of the Department of Orthopedics, acted within the scope of her employment when she filed a formal report of her dispute with Plaintiff Kunkle with law enforcement in July

of 2018.  *See generally* Dkt. No. 1 at 58-64.  Plaintiffs do not point to any additional facts or circumstances that would reveal that Defendant Clark was acting within the scope of her employment in their Memorandum in Opposition.  *See* Dkt. No. 20 at 8.  Thus, the Court grants Defendant's motion to dismiss this claim against Defendant AMMS without prejudice and with leave for Plaintiffs to file a motion to amend their complaint with regard to this claim.

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss Plaintiffs' first, second, and fourth causes of action for breach of contract, breach of the duty of good faith and fair dealing, and defamation against Defendants Hospital, Berlucchi, and Riccio and Plaintiffs' third cause of action for tortious interference with contractual relations against all Defendants, *see* Dkt. No. 12, is **GRANTED WITH PREJUDICE**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiffs' second cause of action for breach of the covenant of good faith and fair dealing against Defendant AMMS, *see* Dkt. No. 12, is **GRANTED WITH PREJUDICE** because it is duplicative of Plaintiffs' breach of contract claim; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiffs' fourth cause of action for defamation against Defendant AMMS, *see* Dkt. No. 12, is **GRANTED WITHOUT PREJUDICE** and with leave for Plaintiffs to file a motion to amend their complaint with regard to this claim; and the Court further

**ORDERS** that Plaintiffs must file any motion for leave to amend their complaint, consistent with this Memorandum-Decision and Order, within **fourteen days** of the date of this Memorandum-Decision and Order[4]; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Dancks for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: April 17, 2020
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

---

[4] The Court notes that Plaintiffs may only move for leave to amend their complaint with regard to their fourth cause of action against Defendant AMMS to demonstrate that Defendant Clark was acting within the scope of her employment when she filed her report with law enforcement.